**IN THE DISTRICT COURT OF PONTOTOC COUNTY**
**STATE OF OKLAHOMA**

| | |
|---|---|
| **RONALD STEWART AND ANDREA HURST, as Guardians of ANGELA STEWART** Plaintiffs, v. **ROLLING HILLS HOSPITAL, INC. ACADIA HEALTHCARE COMPANY, INC. and ACADIA MANAGEMENT COMPANY, LLC** Defendants. | CJ-25-07 |

FILED
JAN 14 2025
LACEE FLANARY, Court Clerk
Pontotoc County, Oklahoma
By ______ Deputy

**PETITION**

**COMES NOW** Plaintiffs, RONALD STEWART and ANDREA HURST as Guardians of ANGELA STEWART, by and through their counsel of record, Amy N. Bennett and John David Lackey for their *Petition* against Defendants, Acadia Healthcare Company, Inc. [hereinafter "Acadia"], Acadia Management Company, LLC and Rolling Hills Hospital, Inc.[hereinafter "Rolling Hills"] and state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Ronald Stewart is Angela Stewart's father and is a resident of Tulsa County.
2. Plaintiff Andrea Hurst is Angela Stewart's sister and is a resident of Muskogee County.
3. Plaintiffs Ronald Stewart and Andrea Hurst are the legal Guardians for Angela Stewart and are proper parties to bring this action on Angela Stewart's behalf.



Exhibit
1

4. Prior to admission to Rolling Hills, Angela Stewart was and now is a resident of Tulsa County.

5. Defendant Rolling Hills is an Oklahoma limited liability company with a registered agent, The Corporation Company, 1833 South Morgan Road, Oklahoma City, Oklahoma 73128.

6. Rolling Hills is a for-profit limited liability company operating in the City of Ada, Pontotoc County, State of Oklahoma.

7. Rolling Hills holds itself out to be a facility that "helps individuals struggling with mental health disorders and addiction build a strong foundation for long-term recovery. Serving Ada, near Oklahoma City, Rolling Hills is the premier provider of psychiatric treatment for adolescents, adults & seniors."

8. Upon information and belief, Defendant Acadia Healthcare Company, Inc. ("Acadia") is is a foreign corporation with corporate headquarters located at 6100 Tower Circle, Suite 1000, Franklin, Tennessee 37067-1509.

9. Acadia operates Rolling Hills, a licensed Oklahoma residential treatment center, that purports to serve adults and individuals with intellectual disabilities.

10. Upon information and belief, Defendant Acadia Management Company, LLC is foreign unregistered corporation, with its principal place of business at 6100 Tower Circle, Suite 1000, Franklin, Tennessee 37067-1509, with a registered agent, CT Corporation System, located at 300 Montvue Road, Knoxville, Tennessee 37919-5546.

11. Upon information and belief, Defendant Acadia uses Acadia Management Company, LLC as the purported employer of the CEO and CFO of its subsidiaries, including Rolling Hills.

12. Acadia provides psychiatric and chemical dependency services to its patients in a variety of settings, including inpatient psychiatric hospitals, specialty treatment facilities, residential treatment centers, outpatient clinics, and therapeutic school-based programs.

13. Acadia holds itself out to be the "leading provider of behavioral healthcare services across the United States."

14. Pursuant to 12 O.S. §137 venue is proper in Pontotoc County.

**FACTS COMMON TO ALL CLAIMS**

15. Defendant Acadia operates a network of behavioral health facilities across the country.

16. Acadia operates Rolling Hills, a licensed Oklahoma residential treatment facility located in Ada, Oklahoma.

17. Upon information and belief, Rolling Hills is a wholly-owned subsidiary of Acadia.

18. Upon information and belief, Acadia controls Rolling Hills including their budget and profitability.

19. Upon information and belief, Acadia and Rolling Hills have shared officers, members, and directors.

20. Upon information and belief, Rolling Hills reports to Acadia when there are incidents at Rolling Hills and Acadia then determines the facility's next steps.

21. Upon information and belief, Rolling Hills' management is trained by Acadia.

22. Acadia controls every aspect of Rolling Hills operation.

**FACTS RELATING TO ANGELA STEWART**

23. On or about December 17, 2023, Angela Stewart was admitted as a patient at Rolling Hills Hospital in Ada, Oklahoma.

24. Prior to being admitted to Rolling Hills, Angela Stewart lived in her own home in Tulsa, Oklahoma and was employed.

25. At the time of admission to Rolling Hills Angela Stewart was a 51-year-old female with a history of psychiatric disorders, but was in otherwise good health.

26. On or about December 25, 2023, just 8 days after admission to Rolling Hills Angela Stewart was transferred and admitted to Mercy Hospital for a noted decrease in level of consciousness.

27. On December 29, 2023, Angela Stewart was transferred back to Rolling Hills Hospital.

28. On January 6, 2024, Angela Stewart was once again transferred to Mercy Hospital, this time following an unreported "second" fall.

29. Upon admission to Mercy Hospital, Angela Stewart was found to have fractured her right leg. In addition, she had swelling and bruising of her face, bruises scattered on her entire body, and a large bruise on her abdomen noted "not likely from the fall" giving rise to her admission.

30. Upon admission to Rolling Hills Angela Stewart did not have any of the bruises noted on her January 6, 2024, admission to Mercy Hospital.

31. While a resident at Rolling Hills for less than 3 weeks, Angela Stewart's physical and mental condition deteriorated substantially.

32. Angela Stewart sustained multiple injuries while a patient at Rolling Hills requiring transfer to Mercy Hospital on two occasions in less than a month.

33. Prior to admission to Rolling Hills Angela Stewart was employed and lived a somewhat active lifestyle.

34. Since admission to Rolling Hills Angela Stewart is no longer able to work, her quality of life has declined, and her mental and physical condition has deteriorated.

35. While Angela Stewart was a resident at Rolling Hills, family members were rarely allowed to make contact with Angela Stewart.

36. While Angela Stewart was a resident at Rolling Hills family members were not notified of any falls.

37. Once the family became aware of the fall(s) the facility refused to provide details or the circumstances surrounding the fall(s).

38. Rolling Hills has refused to provide Angela Stewart's medical records to the family as required by law.

39. Furthermore, upon information and belief, as a result of an investigation based on Angela Stewart's care Rolling Hills was found to be non-compliant with the applicable Centers for Medicaid and Medicare Services (CMS) Conditions.

**COUNT 1- ALTER EGO**

40. The allegations contained in Paragraphs 1-39 above are incorporated herein.

41. Acadia is an alter ego of Acadia.

42. Acadia Management is an alter ego of Acadia and used to control Rolling Hills.

43 Upon information and belief, Acadia completely controls Rolling Hills.

44. Rolling Hills, and other Acadia facilities, are not operated in a legitimate fashion to serve the valid goals and purposes of Rolling Hills but, instead, function under the dominion, control of, and for the purposes of Acadia.

45. Rolling Hills, and other Acadia facilities, are mere business conduits for Acadia.

46. There is such unity of interest and ownership that the individuality and/ or separateness of Acadia and Rolling Hills has ceased.

47. Allowing acknowledgement of the separate corporate existence of Acadia from Rolling Hills would sanction fraud and/ or other improper purposes.

48. In fact, the corporate compliance statement on Rolling Hills website lists an Acadia compliance officer as its compliance contact.

49. The determination that shareholders are the alter egos of the corporation describes the specific situation here where the Acadia shareholders have so manipulated Rolling Hills to further their own individual interests that the identity of Rolling Hills has merged into its Acadia shareholders. That is to say, that Acadia and Rolling Hills have, in fact, become so closely identified that a court in ruling that the corporate entity should be disregarded is merely recognizing reality.

50. The Acadia shareholders have manipulated Rolling Hills for their own purposes, convenience, and benefit.

51. Acadia's control exercised over Rolling Hills is so complete as to render Rolling Hills the instrumentality of Acadia.

52. Rolling Hills is but an instrumentality/ agent of Acadia.

53. Upon information and belief:

a. Acadia owns all, or the majority, of the capital stock in Rolling Hills;

b. Acadia and Rolling Hills corporations have common directors or officers;

c. Acadia finances Rolling Hills and its budget;

d. Acadia subscribes to all the capital stock of Rolling Hills and/ or otherwise caused its incorporation;

e. Rolling Hills has grossly inadequate capital;

f. Acadia pays the salaries and expenses and losses of Rolling Hills, including issuing pay checks to all Rolling Hills employees;

g. In the papers of Acadia, and its statement of Acadia officers, Rolling Hills is referred to as a subsidiary, department, or division of Acadia.

h. The directors and executives of Rolling Hills do not act independently in the interest of Rolling Hills but instead, not only take direction from Acadia, but, in the case of Rolling Hills' CEO and COO, are actual Acadia employees;

i. The formal legal requirements of Rolling Hills as a separate and independent corporation are not observed;

j. All of Rolling Hills' revenue goes to Acadia;

k. All capital expenditures are approved by Acadia;

l. Acadia negotiates employment contracts between Rolling Hills and hired employees.

54. Acadia has complete dominion over Rolling Hills, not only of finances, but also of policy and business practices so as to make it clear that Rolling Hills has no separate mind, will, or existence of its own.

55. As a direct and proximate or legal result of Acadia using Rolling Hills has its alter ego, Angela Stewart was injured and suffered physical injuries and mental injuries.

## COUNT II- NEGLIGENCE

56. The allegations contained in Paragraphs 1-55 above are incorporated herein.

57. Defendants owed a duty to exercise ordinary care and act as a reasonable and prudent company would under the same or similar circumstances, including but not limited to, protecting and ensuring the safety of Angela Stewart from injury.

58. Defendants breached that duty and were negligent.

59. Defendants also had a duty to communicate with Angela Stewart's family members, guardians, and medical durable power of attorney(s) to ensure Angela Stewart was receiving appropriate care and treatment.

60. Defendants breached that duty.

61. Defendants' failure to exercise their duty of care was the sole and proximate cause and/or a proximate cause of Angela Stewart's injuries.

62. Defendants' negligence includes, but is not limited to, the following:

a. Failure to properly monitor Angela Stewart;
b. Failure to provide Angela Stewart with proper care and treatment;
c. Failure to provide a safe environment;
d. Failure to timely, properly, and adequately assess and evaluate Angela Stewart's health conditions;
e. Failure to provide proper care for Angela Stewart's injuries;
f. Failure to train employees;
g. Failure to maintain proper policies and procedures;
h. Failure to follow medical orders;
i. Failure to properly administer and document medications;

j. Failure to develop and implement appropriate policies and procedures;

k. Failure to adequately staff and provide sufficiently trained staff;

l. Failure to provide sufficient and qualified personnel to supervise and monitor the staff;

m. Failure to seek proper medical attention for Angela Stewart;

n. Failure to act immediately to remedy any situation that posed risk to Angela Stewart;

o. Failure to meet the requirements for proper management;

p. Failure to document injuries and provide follow-up care;

q. Failure to notify family members of falls, injuries, and the declining health of Angela Stewart.

63. As a result of the Defendants' negligence, gross negligence and reckless disregard for the safety of Angela Stewart, Angela Stewart suffered serious, painful, and permanent physical injuries, physical and emotional pain, suffering and distress, loss of enjoyment of life, and has incurred medical expenses, for all of which Plaintiff is entitled to actual and compensatory damages.

64. As a result of Defendants' reckless disregard or intentional malice concerning Angela Stewart's care, treatment and safety, Angela Stewart is also entitled to punitive damages against Defendants.

**<u>COUNT III- RESPONDENT SUPERIOR/VICARIOUS LIABILITY</u>**

65. The allegations contained in Paragraphs 1-64 above are incorporated herein.

66. Defendants are vicariously liable for the damage caused to Angela Stewart by the negligent conduct of their employees.

67. At the time of Angela Stewart's admission, Defendants had employees who were acting within the course and scope of their employment with Defendants and were negligent.

68. The negligence of the Defendants' employees was a proximate cause of Angela Stewart's injuries.

69. Defendants are vicariously liable for negligent acts for omission of their employees.

70. Defendants are vicariously liable for any and all wrongful acts and conduct of Defendants for the injuries caused Angela Stewart while in the course and scope of employment.

71. Defendants acts and omission described herein were malicious, willful, reckless, or wanton, displaying a conscious, deliberate or reckless disregard of, or utter indifference to, harmful consequences, including the health, safety, and well-being of Angela Stewart resulting in injury to her person.

72. Defendants are vicariously liable for punitive damages based on the conduct of their employees, officers, and/or principals.

## COUNT IV- NEGLIGENT HIRING, RETENTION, SUPERVISION, and/or ENTRUSTMENT

73. The allegations contained in Paragraphs 1-72 above are incorporated herein.

74. Defendants owed Angela Stewart a duty to employ competent employees to provide care and treatment for her and the facility's residents.

75. Defendants had a duty to select employees/agents that performed work with due diligence, in a good manner, using competent and experienced employees/agents in accordance with recognized industry practices.

76. Defendants had a duty to select employees/agents that performed work with due diligence, in a good manner, using competent and experienced employees/agents that would comply with all applicable rules, regulations, and standards.

77. Defendants breached this duty by entrusting employees/agents that were unfit to care for Ms. Stewart.

78. Defendants failed to exercise reasonable care to employ competent employees and/or agents.

79. Defendants failed to ensure employees and/or agents were properly trained;

80. Defendants failed to supervise such employees and/or agents;

81. Defendants breached their duty to select, train, retain, and/or supervise their employees and were negligent in the selection of their employees to work at Rolling Hills.

82. Defendants had reason to know that that their failure to train, retain, and/or supervise their employees would cause an undue risk or harm to its residents, including, Angela Stewart;

83. Defendants' negligent hiring, retention and/or supervision of its employees was a proximate cause of the injuries sustained by Angela Stewart.

**COUNT V- BREACH OF CONTRACT-THIRD PARTY BENEFICIARY**

84. The allegations contained in Paragraphs 1-83 above are incorporated herein.

85. Upon information and belief, Defendant Rolling Hills entered into a contract to be Angela Stewart's residential treatment program.

86. In reliance upon Rolling Hill's representation of services that would be provided, Angela Stewart was placed in Rolling Hills.

87. Upon information and belief, the Agreement regarding Rollings Hill's obligation to Angela Stewart are set forth in the Rolling Hill's intake and admission assessment, Rolling Hill's online website, and other documents and records related to Angela Stewart's care and treatment.

88. Rolling Hill's promised Angela Stewart's emotional, physical, and behavioral needs would be met by residential treatment and care.

89. Rolling Hill's promised to provide Angela Stewart with a safe and therapeutic residential treatment care environment.

90. Such promises-imposed duties, obligations, and responsibilities on Defendants regarding the safe, appropriate, and therapeutic environment provide for Angela Stewart.

91. Such promises created a contract with Rollings Hills of which Angela Stewart was the third-party beneficiary.

92. Defendants charged money for the services they promised and bargained for as stated in this lawsuit.

93. Defendants breached Rolling Hill's promises and their contractual duties.

94. The parties to the contract described herein intended, and specifically contemplated, Angela Stewart, would be the beneficiary to the contract.

95. As a direct and proximate result of Defendants' breach of this contract, Angela Stewart suffered injuries and damages.

96. The nature of the contract entered into by Rolling Hills was such that emotional injuries were foreseeable as a result of the Defendants' breach of the contract.

97. Defendants are liable to Angela Stewart for all physical and emotional injuries and damage suffered as a result of the breach of contact.

98. Defendants' act and omission herein were malicious, willful, reckless, and/or wanton and a deliberate reckless disregard or indifference to the health and safety of Angela Stewart, resulting in injury to Angela Stewart, justifying an aware of punitive damages.

## COUNT VI- INFLICTION OF EMOTIONAL DISTRESS

99. The allegations contained in Paragraphs 1-98 above are incorporated herein.

100. Defendants' conduct was extreme and outrageous under the circumstances.

101. Defendants acted intentionally and/ or recklessly.

102. As a result of Defendants' conduct, Stewart suffered severe emotional distress.

103. Rolling Hills and Acadia are vicariously liable for the conduct of their employees.

104. As a result of Defendants' intentional conduct, Angela Stewart suffered severe physical, emotional, and mental injuries.

105. Further, Defendants acts and/ or omissions described herein were malicious, willful, reckless, and/ or wanton, displaying a conscious, deliberate, and/ or reckless disregard of, or utter indifference to, harmful consequences, including the health and safety of Ms. Stewart resulting in injuries and to Ms. Stewart justifying an award of punitive damages.

## COUNT VII- CONSPIRACY TO COMMIT FRAUD

106. The allegations contained in Paragraphs 1-105 above are incorporated herein.

107. Defendants combined together to accomplish the unlawful purpose of defrauding residents and their health insurers.

108. Defendants have combined together to commit wrongful acts pursuant to the conspiracy, vis-à-vis Acadia entities, including Rolling Hills.

109. Defendants have committed fraud by making promises to ensure the safety of residents of Rolling Hills while intentionally understaffing facilities, and choosing not to provide adequate levels of staff, thereby endangering the safety of its residents such as Angela Stewart.

110. Upon information and belief, Acadia has committed fraud by falsely and/or fraudulently advertising the safety of residents and holding itself out as a residential treatment center for treating individuals like Angela Stewart despite providing inadequate levels of staffing and not providing for safety or residents. Acadia has made these representations despite have knowledge of multiple investigations, deaths, sexual assault, physical assault, and complaints of understaffing at Acadia facilities.

111. Specifically, upon information and belief, Acadia has committed fraud by making promises to provide adequate staffing levels and to ensure the safety of residents at Rolling Hills while intentionally understaffing facilities and choosing not to provide adequate levels of staff, thereby endangering the safety of residents such as Angela Stewart.

112. Defendants have committed fraud and misused funds by repeatedly hiring unqualified persons with criminal histories and employment histories that should have disqualified them from working in Acadia facilities.

113. Defendants have committed fraud and misused funds by repeatedly failing to report incident and/or downgrading the incident level of incidents that have occurred in facilities to avoid reporting incidents to authorities, governmental agencies, and residents' own parents and guardians, to hide the incidents occurring in facilities and to avoid losing residents and their insurance proceeds.

114. Defendants have committed fraud and misused funds by billing for services never provided, failing to keep residents safe, and subjecting residents to violence and sexual attack.

115. Upon information and belief, numerous patients and residents, including children and teenagers, have died due to Acadia's negligence. There are numerous, recurring reports of sexual and physical abuse at Acadia's facilities, some of which are carried on by employees of Acadia.

116. Upon information and belief, the patterns and behaviors of misconduct at these facilities existed at Rolling Hills when Angela Stewart was mistreated. Upon information and belief, Rolling Hills had unqualified employees, was understaffed, failed to follow or enforce policies and procedures, and engaged in a pattern and practice of merely placing residents to fill beds. Upon information and belief, this conduct was the direct result of the corporate culture and business model of Acadia. The conduct was done in furtherance of the civil conspiracy between Rolling Hills and Acadia and its constituent members and effectuated through Acadia entities.

117. As a direct and proximate or legal result of Defendant's fraud, Angela Steward was injured.

118. As a result of the conspiracy, Defendants are jointly and severally liable for the torts of any member of the conspiracy.

119. Further, Defendants' acts and/or omissions described herein were malicious, willful, reckless, and/or wanton, displaying a conscious, deliberate, and/or reckless disregard of, or utter indifference to, harmful consequences, including the health and safety of Angela Stewart, resulting in injuries and harm to Angela Stewart, justifying an award of punitive damages.

120. Defendants are vicariously liable for punitive damages based on the conduct of their employees, officer, and/or principals. Defendants' employees, officers, and/or principals

were acting in the course and scope of their employment with Defendants and had sufficient discretionary authority to speak for it with regard to the conduct at issue, independent of higher authority.

121. Defendants authorized, participated in, and/or ratified the conduct of their employees, officers, and/or principles. Therefore, Defendants are vicariously liable for punitive damages based on their authorization, participation, and/or ratification of the conduct of their employees, officer, and/or principals

**DAMAGES**

122. Plaintiff incorporates Paragraphs 1-121 above are incorporated herein.

123. As a result of Defendants' conduct, Angela Stewart suffered damages for which Plaintiff seeks damages in an amount in excess of $75,000.

124. Defendants' conduct was with malice and wanton or reckless disregard for Angela Stewart which Plaintiff seeks punitive damages in an amount in excess of $75,000.

125. As a result of the Defendants' negligence, gross negligence and reckless disregard for the safety of Angela Stewart, Angela Stewart suffered serious, painful, and permanent physical injuries, physical and emotional pain, suffering and distress, loss of enjoyment of life, and has incurred medical expenses, for all of which Plaintiff is entitled to actual and compensatory damages.

**WHEREFORE**, premises considered, Plaintiffs, RONALD STEWART and ANDREA HURST as Guardians of ANGELA STEWART, prays for judgment in their favor against each Defendant in an amount in excess of $75,000, for fees and costs as allowed by law, and for such other relief as is just and equitable.

Respectfully Submitted,

Amy N Bennett

John David Lackey, OBA #20516
Amy N. Bennett, OBA #21889
LACKEY BENNETT, P.C.
20 East Fifth Street, Suite 1000
Tulsa, Oklahoma 74103
T: 918.584.2583
F: 918.587.8521
***ATTORNEYS FOR PLAINTIFFS***