## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

Ronald Stewart and Andrea Hurst, as
Guardians of Angela Stewart,

           Plaintiffs,

v.

Rolling Hills Hospital, Inc.,
Acadia Healthcare Company, Inc., and
Acadia Management Company, LLC,

           Defendants.

Case No. CIV-25-51-RAW-DES

(Removed from District Court of Pontotoc
County, Oklahoma)

## MOTION TO DISMISS AND BRIEF IN SUPPORT OF
## DEFENDANTS ROLLING HILLS HOSPITAL, LLC,
## <u>AND ACADIA MANAGEMENT COMPANY, LLC</u>

Mary Quinn Cooper, OBA #11966
Kathy R. Neal, OBA #674
Katie G. Crane, OBA #34575
Grace A. DeJohn, OBA #35582
MCAFEE & TAFT, A PROFESSIONAL CORPORATION
2 West 2nd Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone:   (918) 587-0000
Facsimile:   (918) 599-9317
maryquinn.cooper@mcafeetaft.com
kathy.neal@mcafeetaft.com
katie.crane@mcafeetaft.com
grace.dejohn@mcafeetaft.com

March 3, 2025

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................................1

STATEMENT OF FACTS ................................................................3

ARGUMENTS AND AUTHORITIES ................................................................4

    I.    The Court Should Grant the Rule 12(b)(2) Motion Because the Court Does Not Have Jurisdiction Over Acadia Management ................................4

        A.    Acadia Management Is Not Subject to General Personal Jurisdiction. ................................6

        B.    Acadia Management Is Not Subject to Specific Personal Jurisdiction. ................................7

    II.    The Court Should Grant the Rule 12(b)(6) Motion Because the Complaint Does Not State a Claim Upon Which Relief Can be Granted................................11

        A.    Plaintiffs' Alter Ego Claim Fails as Matter of Law................................11

        B.    Plaintiffs' Negligence Claim Fails as a Matter of Law. ................................12

        C.    Plaintiffs' *Respondeat Superior* Claim Fails as a Matter of Law................................14

        D.    Plaintiffs' Claim for Negligence Hiring Fails as a Matter of Law................................14

        E.    Plaintiffs' Claim for Breach of Contract/Third-Party Beneficiary Fails as a Matter of Law................................15

        F.    Plaintiffs' Claim for Intentional Infliction of Emotional Distress Fails as a Matter of Law................................17

        G.    Plaintiffs' Civil Conspiracy Claim Fails as a Matter of Law. ................................19

    III.    Amendment to the Complaint Would Be Futile................................20

CONCLUSION................................22

# TABLE OF AUTHORITIES

**CASES**

*Allen v. IM Solutions, LLC,*
    94 F. Supp. 3d 1216 (E.D. Okla. 2015)............................................................................19

*Allianz Life Ins. Co. of N. Am. v. Muse,*
    No. CIV-17-1361-W, 2018 WL 11219437 (W.D. Okla. June 25, 2018)..........................18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................11, 12, 15, 19, 23

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................11, 12, 19, 23

*Benton v. Cameco Corp.,*
    375 F.3d 1070 (10th Cir. 2004) ........................................................................................8

*BNSF Railway Co. v. Tyrrell,*
    581 U.S. 402 (2017)..........................................................................................................6

*Brakebill v. Bank of Am.,*
    No. 18- CIV-104-RAW, 2019 WL 1552499 (E.D. Okla. Jan. 25, 2019) ...................21, 22

*Breeden v. League Services Corporation,*
    575 P.2d 1374 (Okla. 1978) .............................................................................................18

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco, Cty,*
    582 U.S. 255 (2017)..........................................................................................................6

*Bryson v. City of Edmond,*
    905 F.2d 1386 (10th Cir. 1990)......................................................................................13

*Charlton v. Ardent Health Servs., LLC,*
    No. 06-CV-0190-CVE-FHM, 2006 WL 1836048 (N.D. Okla. June 30, 2006)................14

*Cowden v. KDL Sols., LLC,*
    No. CIV-20-00830-JD, 2021 WL 12319501 (W.D. Okla. Dec. 17, 2021) ........................7

*Daimler v. Bauman,*
    571 U.S. 117 (2014)..........................................................................................................6

*D'Arcy v. Essential Servs. Intermediate Holding Corp.,*
    No. 6:22-CV-00144-EFM, 2023 WL 2291158 (E.D. Okla. Feb. 21, 2023) ........................7

*Digital Design Group, Inc. v. Information Builders, Inc.*,
    2001 OK 21, 24 P.3d 834. ..................................................................16

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
    514 F.3d 1063 (10th Cir. 2008) ......................................................4, 7

*Ellis v. Isoray Med., Inc.*,
    No. 08-2101- CM, 2008 WL 3915097 (D. Kan. Aug. 22, 2008) ......................14

*Eighteen Seventy, LP v. Jayson*,
    32 F.4th 956, 965-966 (10th Cir. 2022)..............................................7

*Energy Fluids, Inc. v. Cimarex Energy Co*.,
    No. CIV-07-653, 2008 WL 2404226 (W.D. Okla. June 10, 2008) ...................19

*Gilbert v. Sec. Fin. Corp. of Okla., Inc.*,
    152 P.3d 165 (Okla. 2006) ............................................................9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ...................................................................5

*Gray v. Acadia Healthcare Co., Inc.*,
    No. 19-CV-00338-JFH, 2020 WL 5996418 (E.D. Okla. Oct. 9, 2020) ...........16, 17, 19, 20

*Harris v. Am. Int'l Grp., Inc.*,
    923 F. Supp. 2d 1299 (W.D. Okla. 2013).........................................8, 9

*Intercon, Inc. v. Bell Atlantic*,
    205 F.3d 1244 (10th Cir. 2000) ......................................................5

*International Shoe Co. v. Wash.*,
    326 U.S. 310 (1945)...................................................................5

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) .....................................................11

*Lillard v. Stockton*,
    267 F. Supp. 2d 1081 (N.D. Okla. 2003) ..........................................13

*Mengert v. United States*,
    620 F. Supp. 3d 1157, 1164 (N.D. Okla. 2022) .................................17, 18

*Montgomery v. Airbus Helicopters, Inc.*,
    2018 OK 17, 414 P.3d 824 ............................................................5

*N.H v. Presbyterian Church,*
    1999 OK 88, 998 P.2.d 592 ...................................................................................14, 15

*Old Republic Ins. Co. v. Cont'l Motors, Inc.,*
    877 F.3d 895, 903 (10th Cir. 2017) ..................................................................5

*Prunte v. Universal Music Group,*
    484 F. Supp. 2d 32 (D.D.C.2007) ....................................................................14

*Robbins v. Oklahoma,*
    519 F.3d 1242 (10th Cir. 2008) .......................................................................12

*Stockton v. CNH Indus. Am., LLC,*
    No. 16-CV-464-GKF-PJC, 2017 WL 11493759 (N.D. Okla. Jan. 18, 2017) ....................9

*Warad W., LLC v. Sorin CRM USA Inc.,*
    119 F. Supp. 3d 1294 (D. Colo. 2015) .............................................................8

*World-Wide Volkswagen v. Woodson,*
    444 U.S. 286 (1980).......................................................................................5

*XMission, L.C. v. Fluent LLC,*
    955 F.3d 833 (10th Cir. 2020) .........................................................................7

*Young through Young v. Kerr-McGee Corp.,*
    658 F. Supp. 3d 1028 (E.D. Okla. 2023)......................................................9, 12

## OTHER AUTHORITIES

FED. R. CIV. P. 4(k)(1)(A) ...................................................................................5

FED. R. CIV. P. 9(b) ..........................................................................................19

FED. R. CIV. P. 12(b)(2) ......................................................................... 1, 4, 9, 23

FED. R. CIV. P. 12(b)(6) ........................................................................ 1, 11, 12, 23

FED. R. CIV. P. 15(a) ........................................................................................21

LCvR 7.1(o) ....................................................................................................20

OKLA. STAT. tit. 12 § 2004 ...................................................................................5

OKLA. STAT. tit. 15 § 29 .....................................................................................16

OUJI No. 7.3 ...................................................................................................14

Restatement (Second) of Torts § 46 (1965), comment j ...........................................18

4A Charles Alan Wright *et al.*, Fed. Prac. & Proc. § 1069.4 (3d ed., Apr. 2015 update) ...............8

Defendant Acadia Management Company, LLC ("Acadia Management") moves this Court, pursuant to FED. R. CIV. P. 12(b)(2), to enter an order dismissing the Complaint [Dkt. No. 2-1] of Plaintiffs Ronald Stewart and Andrea Hurst, as Guardians of Angela Stewart ("Plaintiffs"), for lack of personal jurisdiction. Additionally, Rolling Hills Hospital, LLC ("Rolling Hills")[1] joins with Acadia Management (collectively, the "Defendants") to request dismissal of Plaintiffs' claims pursuant to FED. R. CIV. P. 12(b)(6).[2] In support of the Motion, Defendants submit the following Brief in Support.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Rolling Hills is a mental health and drug addiction facility located in Ada, Oklahoma. Plaintiffs sued Rolling Hills and Acadia Management, an affiliate of Rolling Hills, alleging that Angela Stewart, a 51-year-old woman suffering from psychiatric disorders, was injured while she was treated at Rolling Hills by its staff.

Plaintiffs' attempt to include Acadia Management as a defendant fails for lack of personal jurisdiction. Acadia Management is a Delaware limited liability company headquartered in Tennessee, and thus, has no systematic or continuous contacts in Oklahoma sufficient to confer the Court's general jurisdiction over it. Additionally, the Court cannot exercise specific jurisdiction over Acadia Management because Plaintiffs have not pleaded sufficient contacts to support it. In fact, Plaintiffs scarcely make any allegations against Acadia Management at all, stating summarily that Acadia Management is the alter ego of Acadia Healthcare Company, Inc., but failing to allege anything else about the entity, including any actions taken by it that resulted in any injury to Ms. Stewart. The allegations of the Complaint are insufficient to hail Acadia Management to a

---

[1] Rolling Hills is incorrectly identified as "Inc." in the case caption.

[2] As of the date of this filing, Plaintiffs have not effectuated service on Acadia Healthcare Company, Inc. ("Acadia Healthcare"), so Acadia Healthcare does not join in this motion.

1

jurisdiction at which it is not at home and, even according to Plaintiffs, in which Acadia Management has committed no tortious actions.

Additionally, all seven (7) causes of action asserted against "Defendants" (as Plaintiffs do not distinguish in the seven counts which of the three defendants is allegedly responsible for the claims detailed therein) should be dismissed for Plaintiffs' failure to meet basic pleading requirements.

First, the alter ego claim (Count I) should be dismissed as it fails to set forth any allegations showing that Acadia Management and Acadia Healthcare and/or Rolling Hills have so disregarded the corporate form that they are one in the same. In fact, Acadia Management is not mentioned at all in Count I of the Complaint. This is clearly insufficient to plausibly establish that Acadia Management is the alter ego of either of the other defendants.

Second, Plaintiffs' negligence claim (Count II) should be dismissed as it alleges all Defendants were generally negligent without differentiating between them. Moreover, Plaintiffs have failed to plead facts demonstrating that any Defendants owed Plaintiffs a duty of care or that any Defendants breached such a duty.

Third, the claim for *respondeat superior* (Count III) fails as a matter of law. There is no recognized stand-alone right of action for *respondeat superior*. Rather, it is a legal doctrine that holds one party responsible for the actions of another based on an underlying legal duty. Thus, Plaintiffs have failed to assert a plausible cause of action for *respondeat superior*.

Fourth, the claim for negligent hiring (Count IV) should be dismissed as it fails to plead the essential elements required to recover on this cause of action. Plaintiffs do not allege the propensities of the specific employees who allegedly created an undue risk of harm, how

Defendants knew of the harm, or any specific harm caused. Further, Plaintiffs do not even identify an employee (or employees) who caused the alleged harm.

Fifth, the claim for breach of contract (Count V) should be dismissed as it fails to identify the existence of a contract at all—much less a breach of specific provisions allegedly therein.

Sixth, Plaintiffs' claim for intentional infliction of emotional distress (Count VI) should be dismissed because Plaintiffs' vague assertions do not plausibly allege any of the four (4) required elements of that cause of action. Nor do Plaintiffs sufficiently assert Ms. Stewart suffered any emotional distress, or that it was so extreme that "no reasonable man would be expected to endure it."

Seventh, the claim for civil conspiracy (Count VII) should be dismissed, as Plaintiffs failed to assert the parties to the alleged conspiracy, an object or a meeting of the minds, the existence of an underlying tort or wrongful act in furtherance of a conspiracy, or any damages resulting from the alleged conspiracy.

For these reasons, and those detailed further herein, the Court should dismiss all causes of action in the Complaint.

## STATEMENT OF FACTS

Plaintiffs allege that Angela Stewart, a 51-year-old female with a "history of psychiatric disorders," was admitted on December 17, 2023, as a patient to Rolling Hills, a facility that "helps individuals struggling with mental health disorders and addiction build a strong foundation or long-term recovery.". Compl., ¶¶ 7, 23, 25. Plaintiffs allege that "Angela Stewart was transferred and admitted to Mercy Hospital for a noted decrease in level of consciousness" on December 25, 2023. *Id.* ¶ 26. Plaintiffs state that Angela Stewart was transferred back to Rolling Hills on December 29, 2023. *Id.* ¶ 27. Plaintiffs further allege that on January 6, 2024, Angela Stewart was transferred to Mercy Hospital following "an unreported 'second' fall." *Id.* ¶ 28. Upon admission to Mercy

Hospital, Plaintiffs allege that "Angela Stewart was found to have fractured her right leg," and had "swelling and bruising of her face, bruises scattered on her entire body, and a large bruise on her abdomen." *Id.* ¶ 29. Plaintiffs allege Angela Stewart's family was not timely informed of her injuries and that Angela Stewart "is no longer able to work, her quality of life has declined, and her mental and physical condition has deteriorated" since her treatment at Rolling Hills. *Id.* ¶ 34.

Based on these allegations, Plaintiffs allege seven causes of action against "Defendants:" (1) alter ego, alleging "Acadia Management is an alter ego of Acadia [Healthcare] and used to control Rolling Hills," *id.* ¶ 43; (2) negligence for failure to protect Ms. Stewart from injury and communicate with her family regarding her care, *id.* ¶¶ 56-64; (3) *respondeat superior*/vicarious liability for the "negligent conduct of [] employees," *id.* ¶ 66; (4) negligent hiring, retention, supervision, and/or entrustment, alleging Defendants breached their duty to select "employees/agents that performed work with due diligence" by "entrusting employees/agents that were unfit to care for Ms. Stewart," *id.* ¶¶ 75-76; (5) "breach of contract-third- party beneficiary," alleging that "Rolling Hills entered into a contract to be Angela Stewart's treatment program" and breached that contract causing Ms. Stewart's injuries and damages, *id.* ¶¶ 85, 93; (6) intentional infliction of emotional distress, *id.* ¶¶ 99-105; and (7) conspiracy to commit fraud, asserting that "Defendants combined together to accomplish the unlawful purpose of defrauding residents and their health insurers," *id.* ¶ 107. Plaintiffs seek "damages in an amount in excess of $75,000," as well as punitive damages. *See id.* ¶¶ 123, 124.

## ARGUMENTS AND AUTHORITIES

**I.    The Court Should Grant the Rule 12(b)(2) Motion Because the Court Does Not have Jurisdiction Over Acadia Management.**

Plaintiffs bear the burden of establishing personal jurisdiction, *see Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1069 (10th Cir. 2008) (citations omitted), but Plaintiffs

have failed to plead sufficient facts that establish Acadia Management is subject to personal jurisdiction in Oklahoma.

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal district court may exercise personal jurisdiction to the extent allowed by the forum state's long arm statute. *Old Republic Ins. Co. v. Cont'l Motors, Inc.,* 877 F.3d 895, 903 (10th Cir. 2017). Accordingly, Oklahoma's long-arm statute, Okla. Stat. tit. 12, § 2004, governs whether this Court has personal jurisdiction over Acadia Management. The Oklahoma Supreme Court has interpreted the state's long-arm statute as reaching to the full extent allowed by the Oklahoma Constitution and the Due Process Clause of the United States Constitution. *Montgomery v. Airbus Helicopters, Inc.*, 2018 OK 17, ¶ 18, 414 P.3d 824, 829; *see also* OKLA. STAT. tit. 12, § 2004(F).

The Due Process Clause lends "a degree of predictability to the legal system," providing potential defendants "some minimum assurance as to where [their primary] conduct will and will not render them liable to suit." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). To comport with due process, a court may exercise personal jurisdiction over a nonresident defendant so long as there exists "minimum contacts" between the defendant and the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quotations omitted). The existence of minimum contacts can be established by either specific or general jurisdiction. *See Intercon, Inc. v. Bell Atlantic*, 205 F.3d 1244, 1247 (10th Cir. 2000); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

Plaintiffs can assert no proper factual basis for general or specific jurisdiction over Acadia Management; therefore, the Complaint should be dismissed against it.

A.    <u>Acadia Management Is Not Subject to General Personal Jurisdiction.</u>

In 2014, the United States Supreme Court affirmed that general jurisdiction refers to a court's power to hear claims against a nonresident corporate defendant when the defendant's "affiliations with the State in which suit is brought are so continuous and systematic as to render it essentially at home in the forum state." *Daimler v. Bauman*, 571 U.S. 117, 127 (2014) (citations omitted).  "With respect to a corporation, the place of incorporation and principal place of business are the paradigm bases for general jurisdiction." *Id*. at 137 (quotations omitted).

The Supreme Court reaffirmed its line of reasoning in *Daimler* in *BNSF Railway Co. v. Tyrrell*, 581 U.S. 402 (2017).  In that case, the Court held that BNSF, which is incorporated in Delaware and has its principal place of business in Texas, was not subject to general jurisdiction in Montana, despite the fact that BNSF has over 2,000 miles of railroad track and more than 2,000 employees in Montana.  *Id*. at 414. In so holding, the Court emphasized that, "in-state business, [as] clarified in *Daimler and Goodyear*, does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the forum state]." *Id*.; *see also Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco, Cty.*, 582 U.S. 255, 262 (2017) (reaffirming *Daimler* and stating "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that State (citations omitted)).

Plaintiffs allege that Acadia Management is a "foreign unregistered corporation" headquartered in Tennessee.  Compl., ¶ 10.  In fact, Acadia Management is a limited liability company and a citizen of Delaware and Tennessee. *See* [Dkt. No. 2], Notice of Removal, ¶ 10. Absent from the Complaint are any allegations suggesting that Acadia Management's affiliations with Oklahoma are so continuous and systematic as to render it essentially at home here. Therefore, the Court cannot exercise general jurisdiction over Acadia Management.

B.     Acadia Management Is Not Subject to Specific Personal Jurisdiction.

This Court cannot exercise specific jurisdiction over Acadia Management because Plaintiffs' claims do not arise out of, or relate to, Acadia Management's contacts in the State of Oklahoma.

Specific jurisdiction may exist when "a defendant's contacts with the forum state [are] sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965-966 (10th Cir. 2022) (quoting *Dudnikov*, 514 F.3d 1070). To determine whether minimum contacts exist for a defendant, courts must examine: "(1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." *D'Arcy v. Essential Servs. Intermediate Holding Corp.*, No. 6:22-CV-00144-EFM, 2023 WL 2291158, at *3 (E.D. Okla. Feb. 21, 2023). The defendant's contacts "must be the defendant's own choice and not random, isolated, or fortuitous. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 847 (10th Cir. 2020) (quotations and citations omitted). Instead, "the defendant's contacts must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Cowden v. KDL Sols., LLC*, No. CIV-20-00830-JD, 2021 WL 12319501, at * 3 (W.D. Okla. Dec. 17, 2021) (quotations and citations omitted).

Plaintiffs' Complaint is void of any allegations showing that Acadia Management purposefully availed itself of Oklahoma or that Ms. Stewart's injuries arose from any purposefully directed activities. Nor could they, as Plaintiffs allege that all of Ms. Stewart's injuries occurred during her stay at Rolling Hills and were caused by individuals working at Rolling Hills. Rather, the Complaint attempts to establish specific jurisdiction by alleging that "Acadia Management is

an alter ego of Acadia [Healthcare] and used to control Rolling Hills." Compl. ¶ 42. But, such a theory of specific jurisdiction necessarily fails because: (1) Plaintiffs have not pleaded any facts showing that Acadia Healthcare and Acadia Management are one in the same; (2) even if Plaintiffs have pleaded such an alter ego relationship, absent from the Complaint are any Oklahoma contacts of Acadia Healthcare that could be imputed to Acadia Management; and (3) the tortured proposition that Rolling Hills' Oklahoma contacts can be imputed to its parent, Acadia Healthcare, and then imputed to Acadia Healthcare's subsidiary Acadia Management, is not supported by caselaw.

Courts in the Tenth Circuit apply the "alter ego" doctrine to determine whether a subsidiary's forum contacts may be imputed to a parent corporation for jurisdictional purposes. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (considering, for jurisdictional purposes, whether a subsidiary was "the general agent or alter ego" of the non-forum parent corporation). "When a subsidiary of a foreign corporation is carrying on business in a particular jurisdiction, the parent company is not automatically subject to jurisdiction in that state because of the presumption of corporate separateness." *Warad W., LLC v. Sorin CRM USA Inc.,* 119 F. Supp. 3d 1294, 1298 (D. Colo. 2015) (quoting 4A Charles Alan Wright *et al.*, Fed. Prac. & Proc. § 1069.4 (3d ed., Apr. 2015 update)). A holding or parent company will be treated separately from its subsidiary "in the absence of circumstances justifying disregard of the corporate entity." *Benton,* 375 F.3d at 1081 (quotations and citations omitted). "[T]he primary consideration is the level of control exercised by the parent over the subsidiary." *Harris v. Am. Int'l Grp., Inc.,* 923 F. Supp. 2d 1299, 1305 (W.D. Okla. 2013). "In order to establish jurisdiction . . . there must be proof of pervasive control by the parent over the subsidiary more than what is ordinarily

exercised by a parent corporation." *Id.* (quoting *Gilbert v. Sec. Fin. Corp. of Okla., Inc.*, 152 P.3d 165, 174 (Okla. 2006)). As well stated by the Court in *Stockton v. CNH Indus. Am., LLC*:

> Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent. The fact that a parent and its subsidiary coordinate and cooperate and regularly share financial and operating information alone cannot support a *prima facie* showing of alter ego status justifying the exercise of personal jurisdiction over the parent company. Rather, a plaintiff must show the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded.

No. 16-CV-464-GKF-PJC, 2017 WL 11493759, at *6 (N.D. Okla. Jan. 18, 2017) (quotations, citations, and alterations omitted).

The sparse allegations in the Complaint do not plausibly allege jurisdiction over Acadia Management pursuant to an alter ego jurisdictional theory. Acadia Healthcare is the parent of a number of independent subsidiary companies, including Rolling Hills and Acadia Management. *See* [Dkt. Nos. 15-16], Acadia Management and Rolling Hills Corporate Disclosure Statements. The Complaint alleges that "Acadia Management is the employer of the CEO and CFO of Rolling Hills."[3] That is the only allegation concerning Acadia Management's conduct or any acts by it in Plaintiffs' entire pleading. Such scant allegation is insufficient to show facts sufficient to make an alter ego showing sufficient to confer the court's jurisdiction over Acadia Management. *See Young through Young v. Kerr-McGee Corp.*, 658 F. Supp. 3d 1028, 1036 (E.D. Okla. 2023) (granting a Rule 12(b)(2) motion and holding that "[c]onclusory allegations of 'alter ego' status are insufficient to state a claim" because a plaintiff "must allege specifically both of the elements of alter ego liability, as well as facts supporting each").

---

[3] The Complaint also alleges that "Rolling Hills' CEO and COO [] are actual [sic] Acadia [Healthcare] employees." Compl. ¶ 53(h).

Here, Plaintiffs also argue that "Acadia Management is an alter ego of Acadia [Healthcare] and used to control Rolling Hills," Compl. ¶ 43, but Plaintiffs do not include any specific allegations purporting to show that Acadia Healthcare exercises out-of-the-ordinary control over Acadia Management. While Plaintiffs spend several paragraphs detailing the alleged alter ego relationship between Acadia Healthcare and Rolling Hills, *see, e.g.,* Compl., ¶ 15-22, Plaintiffs do not include even a singular allegation showing that Acadia Healthcare and Acadia Management are so interconnected that, for the purposes of a personal jurisdiction analysis, they should be treated as one in the same.

Finally, Plaintiffs' allegations do not present the typical alter ego jurisdictional analysis in which a subsidiary's contacts imputed to its parent, as Acadia Management and Rolling Hills are both subsidiaries of Acadia Healthcare and do not have a parent/subsidiary relationship. The Complaint alleges that Acadia Management and Acadia Healthcare are alter egos, and then without connecting the dots, states that Acadia Management is "used to control Rolling Hills." Compl., ¶ 42. Acadia Management's best guess is that Plaintiffs are attempting to impute Rolling Hills' contacts to Acadia Healthcare and then roll those contacts over to Acadia Healthcare's subsidiary Acadia Management. But Acadia Management has found no caselaw to support the proposition that contacts hopscotch from one subsidiary (Rolling Hills) to a parent (Acadia Healthcare) then to a parent's other subsidiary (Acadia Management), especially when there are no allegations supporting an alter ego relationship between the parent (Acadia Healthcare) and the parent's other subsidiary (Acadia Management).

For all of these reasons, this Court cannot exercise specific jurisdiction over Acadia Management.

## II.    The Court Should Grant the Rule 12(b)(6) Motion Because the Complaint Does Not State a Claim Upon Which Relief Can be Granted.

Rule 12(b)(6) of the Federal Rules of Civil Procedure empowers courts to dismiss a complaint because it fails to state a claim upon which relief may be granted.  To survive a motion to dismiss, a complaint must contain well-pleaded factual allegations sufficient "to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "a formulaic recitation of the elements of a cause of action will not suffice." *Khalik*, 671 F.3d at 1191 (quotations omitted).  Although the Court should accept all well-pleaded factual allegations in a complaint as true when ruling on a motion to dismiss, the Court should disregard mere labels and legal conclusions masked as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly,* 550 U.S. 555. The complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. 678 (quotations and citations omitted).

Because Plaintiffs have failed to adequately plead their claims against "Defendants," the Court should dismiss the Complaint.

### A.    Plaintiffs' Alter Ego Claim Fails as a Matter of Law.

As shown above, Plaintiffs have made no specific allegations establishing that Acadia Management and Acadia Healthcare are alter egos other than the conclusory allegation that it is so.  In fact, Plaintiffs say it best in Count I of the Complaint: "As a direct and proximate or legal result of Acadia [Healthcare] using Rolling Hills has [sic] its alter ego, Angela Stewart was injured and suffered physical injuries and mental injuries." Compl. ¶ 55. Such allegation does not involve

Acadia Management whatsoever. In fact, Acadia Management is not mentioned at all in Count I. Absent any allegations concerning Acadia Management, let alone the requisite allegations required by *Twombly/Iqbal,* Plaintiffs' alter ego claim fails as a matter of law, as conclusory allegations of "alter ego" status are insufficient to state a claim. *See Young through Young,* 658 F. Supp. 3d 1028 (dismissing an alter ego claim pursuant to Rule 12(b)(6) for plaintiffs' failure to "allege specifically both of the elements of alter ego liability, as well as facts supporting each").

Therefore, Count I should be dismissed as a matter of law.

B.    Plaintiffs' Negligence Claim Fails as a Matter of Law.

In Count II of their Complaint, Plaintiffs assert a claim for negligence against *all* Defendants—without distinguishing between the Defendants as it pertains to the alleged negligent acts. Consequently, Plaintiffs have not pleaded facts demonstrating that any Defendant owed Plaintiffs a duty of care or that any Defendant breached such a duty.

"The burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against *each* of the defendants. Given the complaint's use of [] the collective term "Defendants"[] it is impossible for any of these individuals to ascertain what particular [] acts they are alleged to have committed." *Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir. 2008) (reversing the judgment of the district court and remanding with instruction to dismiss the claim for failure to state a claim on which relief can be granted because, "[t]he burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants [and] [g]iven the complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." (quotations and citations omitted)).

At a minimum, Plaintiffs are required to plead a *prima facie* case for negligence, which includes: (1) The existence of a duty on the part of Defendants to protect Ms. Stewart from injury; (2) a violation or breach of that duty; and (3) injury to Plaintiffs proximately resulting from Defendants' breach. *Lillard v. Stockton*, 267 F. Supp. 2d 1081 (N.D. Okla. 2003) (quotations and citations omitted).

Plaintiffs allege that "Defendants owed a duty to exercise ordinary care and act as a reasonable and prudent company would under the same or similar circumstances, including but not limited to, protecting and ensuring the safety of Angela Stewart from injury." Compl., ¶ 57. Also, "Defendants breached that duty and were negligent." *Id.* ¶ 58. All of Plaintiffs' allegations are directed at all "Defendants" without distinguishing any of the Defendants' supposed negligent conduct from the others. Vague and conclusory allegations directed at all Defendants are insufficient to assert a viable claim for negligence. *See Lillard,* 267 F. Supp. 2d 1117. (citing *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990) ("Plaintiffs fail to plead any facts supporting an inference that the other Defendants owed a duty to Plaintiffs or demonstrating how that duty was breached in Plaintiffs' transaction. Instead, Plaintiffs rely on conclusory allegations of common control to impute liability to all Defendants. A court is not required to accept mere conclusions characterizing pleaded facts or unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them." (quotations omitted)).

Plaintiffs fail to plausibly describe a duty owed by any specific Defendant, particularly Acadia Management, or how such duty was breached. Therefore, Plaintiffs' negligence claim should be dismissed against Defendants for failure to state a plausible claim upon which relief may be granted.

C.  Plaintiffs' *Respondeat Superior* Claim Fails as a Matter of Law.

In Count III of the Complaint, Plaintiffs assert that Defendants are vicariously liable for the acts of certain employees through the doctrine of *respondeat superior*.  Such a claim fails because there is no standalone right of action for *respondeat superior*.

*Respondeat superior* is a legal doctrine that holds one party responsible for the actions of another based on an underlying legal duty.  However, it is "not cognizable as a stand-alone claim; rather, it is a method by which to prove another claim." *Ellis v. Isoray Med., Inc*., No. 08-2101-CM, 2008 WL 3915097 (D. Kan. Aug. 22, 2008); *see also Prunte v. Universal Music Group*, 484 F.Supp.2d 32, 43–44 (D.D.C.2007) ("Respondeat superior is not itself a cause of action or a cognizable legal claim.").  Because Plaintiffs attempt to assert this claim separate from an underlying tort, it must be dismissed.  *See Charlton v. Ardent Health Servs.*, LLC, No. 06-CV-0190-CVE-FHM, 2006 WL 1836048 (N.D. Okla. June 30, 2006) (*sua sponte* dismissing the plaintiff's claim for *respondeat superior*, stating, "[r]espondeat superior is a legal doctrine whereby employers may be held liable for actions of their employees. *See* OUJI No. 7.3. The doctrine of respondeat superior does not establish a right of action separate from an underlying tort."); *see also Ellis* 2008 WL 3915097 at *3 ("[r]espondeat superior is not cognizable as a stand-alone claim; rather, it is a method by which to prove another claim. . .[t]he court therefore dismisses [respondeat superior claim] as an individual claim[].")

D.  Plaintiffs' Claim for Negligent Hiring Fails as a Matter of Law.

In Count IV of the Complaint, Plaintiffs attempt to hold all Defendants liable for negligent hiring, retention, training, and/or entrustment. Compl., ¶ 73-83.  The claim should be dismissed against Defendants because Plaintiffs fail to plead any sufficient facts in support of this claim.

In Oklahoma, an employer may be found liable for negligent hiring, retention, or supervision "if— at the critical time of the tortious incident— the employer had reason to believe

14

that the person would create an undue risk of harm to others." *N.H v. Presbyterian Church*, 1999 OK 88, ¶ 20, 998 P.2.d 592. Plaintiffs claim that Ms. Stewart was harmed, *see, e.g.,* Compl. ¶ 28, 37, but plead no facts as to the circumstances of the alleged injury, including which—if any at all—employees were responsible for the alleged harm. Even taking Plaintiffs' allegations as true concerning Ms. Stewart's injuries, Plaintiffs fail to plead the most essential elements of a claim for negligent hiring. Plaintiffs do not specify the propensities of the employees that would allegedly create an undue risk of harm to others, or that any employees caused a harm at all. *See N.H.,* 1999 OK 88, ¶ 21 ("The critical element for recovery is the employer's prior knowledge of the servant's propensities to create the specific danger resulting in damage.")

Additionally, employers are only held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought. *Id.* The Complaint states Defendants had "reason to know" that its employees would cause "an undue risk or harm to its residents" Compl. ¶ 82, but Plaintiffs fail to allege that Defendants had the necessary prior knowledge of any employee's alleged propensity to engage in any inappropriate conduct, like a propensity to fail to properly monitor residents for falls or a propensity to fail to notify family of any injury to a Rolling Hills resident. Further, the Complaint fails to identify any employee(s) as the supposed perpetuators of harm.

Because the negligent hiring claim offers only "[t]hreadbare recitals of elements of a cause of action," it fails to state a claim for which relief may be granted. *Iqbal*, 556 U.S. at 678. The Court should thus dismiss this claim against Defendants.

E.    Plaintiffs' Claim for Breach of Contract/Third-Party Beneficiary Fails as a Matter of Law.

Count V for breach of contract is asserted against all "Defendants," but only references a "contract" with Rolling Hills. The alleged "contract" is not a contract at all, but instead refers to

15

"Rolling Hill's [sic] intake and admission assessment, Rolling Hill's [sic] online website, and other documents and records related to Angela Stewart's care and treatment." Compl. ¶ 87. This claim should be dismissed for the (1) failure to plead anything more than a recital of the elements for a breach of contract claim, and a (2) failure to identify the existence of a contract.

To state a claim for breach of contract, a plaintiff must plead facts showing "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Gray v. Acadia Healthcare Co., Inc.*, No. 19-CV-00338-JFH, 2020 WL 5996418 (E.D. Okla. Oct. 9, 2020) (quoting *Digital Design Group, Inc. v. Information Builders, Inc.*, 2001 OK 21, 24 P.3d 834, 843). Moreover, Oklahoma law provides, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Okla. Stat. tit. 15, § 29. The third-party beneficiary need not be a party to or be named in the contract to occupy third-party beneficiary status. *See id.*

Here, Plaintiffs failed to plead any of the elements required for a breach of contract claim, much less for a third-party beneficiary claim. Plaintiffs claim that Rolling Hills entered into a contract to be Ms. Stewart's residential treatment program. Compl. ¶ 85. More specifically, the Complaint states, "Rolling Hill's [sic] promised to provide Angela Stewart with a safe and therapeutic residential treatment care environment," and that "such promises created a contract with Rollings Hills [sic] of which Angela Stewart was the third-party beneficiary." *See id.* ¶ 89, 91. Confusingly, the Complaint does not indicate who entered a "contract" with Rolling Hills with Ms. Stewart as the intended beneficiary. Indeed, because the existence of a contract is not established, Plaintiffs cannot satisfy the "formation" of a contract element.

Additionally, Plaintiffs have failed assert any breach of the alleged contract. Plaintiffs do not identify any specific contract provisions that were allegedly breached, nor do they specify a

16

particular provision establishing the intent for Angela Stewart to benefit from the agreement. *See Gray*, 2020 WL 5996418, at *9 ("Plaintiff does not identify any provisions of a contract between CYFD and Rolling Hills that were allegedly breached.  Nor does Plaintiff point to any provision of any contract to establish it was the contracting parties' intent that [alleged third-party beneficiary] receive a benefit from the contract.  Plaintiff allegations are conclusory and unsupported by essential factual averments.  Therefore, dismissal of Plaintiff's breach of contract claim is appropriate." (citations omitted)).

The claim is seemingly asserted against all Defendants, however, the claim only alleges that a contract existed between Plaintiffs and Rolling Hills. Compl. ¶ 85 ("[] Defendant Rolling Hills entered into a contract to be Angela Stewart's residential treatment program.").  The claim makes no assertion of the existence of an agreement between Ms. Stewart, a third-party, or any other entity and Acadia Management.  Thus, the Court should dismiss Count V against both Defendants.

F.  Plaintiffs' Claim for Intentional Infliction of Emotional Distress Fails as a Matter of Law.

Plaintiffs fail to plausibly allege intentional infliction of emotional distress ("IIED"), in Count VI, which requires the following elements: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Mengert v. United States*, 620 F. Supp. 3d 1157, 1164 (N.D. Okla. 2022), *aff'd*, 120 F.4th 696 (10th Cir. 2024).

While Plaintiffs vaguely assert that Defendants[4] "acted intentionally, and/or recklessly" Compl., ¶ 101, the allegations never sufficiently describe how Defendants' conduct was "intentional" or "reckless" to cause harm to Plaintiffs. Instead, Plaintiffs only assert that Ms. Stewart was a patient at Rolling Hills, while at Rolling Hills, she was injured. *See* Compl., ¶ 23, 28-30. But Plaintiffs include no facts whatsoever showing that these alleged occurrences of injury were caused intentional or due to reckless conduct on behalf of Rolling Hills.

Regardless, even if Plaintiffs met their burden of sufficiently alleging the conduct was intentional or reckless, Plaintiffs have not properly plead that Ms. Stewart's alleged resulting emotional distress was severe. "While emotional distress includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea, [it is only] where the emotional distress is **extreme** that liability arises." *See Mengert*, 620 F. Supp. 3d 1164 (quotations and citations omitted) (emphasis added). Since "[a]n action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress[,]" the Court is tasked at this stage of the litigation with determining whether "severe emotional distress can be found," based on the allegations in the challenged pleading. *Allianz Life Ins. Co. of N. Am. v. Muse,* No. CIV-17-1361-W, 2018 WL 11219437, at *5 (W.D. Okla. June 25, 2018) (quoting *Breeden v. League Servs. Corp.*, 575 P.2d 1374, 1377 (Okla. 1978)). The distress inflicted by a defendant and experienced by an aggrieved claimant must be of such character "'that no reasonable man could be expected to endure it.'" *Id*. (quoting Restatement (Second) of Torts § 46 (1965), comment j).

---

[4] Again, the claim is asserted against all "Defendants," but Plaintiffs make no plausible claims against or even mention Acadia Management. The claim does not allege any conduct of Acadia Management which may be considered "extreme and outrageous" (as it does not allege any conduct of Acadia Management at all). This claim must be dismissed against Acadia Management as the pleadings support no feasible possibility of recovery.

Here, Plaintiffs have clearly failed to establish any plausible emotional distress suffered by Ms. Stewart. Rather, the Complaint only states that "[a]s a result of Defendants' conduct, Stewart suffered severe emotional distress." *See* Compl., ¶ 102.  The required pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. 555).

These vague accusations of emotional harm do not approach the pleading standard required to state a claim for which relief may be granted. Thus, Count VI should be dismissed.

G.    Plaintiffs' Civil Conspiracy Claim Fails as a Matter of Law.

In Count VII of the Complaint, Plaintiffs assert a claim for conspiracy to commit fraud.[5] To state a claim for civil conspiracy, "[p]laintiffs must allege: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof-*Allen v. IM Solutions, LLC*, 94 F. Supp. 3d 1216, 1233 (E.D. Okla. 2015).  "Participation in a civil conspiracy is not, by itself an actionable tort.  Rather, a civil conspiracy claim requires the existence of an underlying tort or wrongful act committed by one or more of the conspirators in furtherance of the conspiracy." *Id.* at 1233 (quotations and citations omitted).  The more stringent pleading standard found in Rule 9(b) applies to a civil conspiracy claim premised on fraud. *Gray*, 2020 WL 5996418 at *8 (citing *Energy Fluids, Inc. v. Cimarex Energy Co*., No. CIV-07-653, 2008 WL 2404226, at *1 (W.D. Okla. June 10, 2008)).

First, Plaintiffs fail to identify the parties they claim are involved in the alleged conspiracy. Plaintiffs only state that "Defendants have combined together to commit wrongful acts pursuant to the conspiracy, vis-à-vis Acadia entities, including Rolling Hills."  *See* Compl., ¶ 108.  Later,

---

[5] There is no civil claim of "conspiracy to commit fraud." The claim should be properly titled as Civil Conspiracy.

Plaintiffs allege "Acadia [Healthcare] has committed fraud," *id*. ¶ 111, and that "[t]he conduct was done in furtherance of the civil conspiracy between Rolling Hills and Acadia and its constituent members and effectuated through Acadia entities," *id*. ¶ 116. There are multiple inconsistencies in describing the participants of the so-called conspiracy, and none include Acadia Management. Thus, the first element of civil conspiracy fails. *See Gray*, 2020 WL 5996418 at *8 ("Plaintiff does not identify the members of the alleged conspiracy[], Plaintiff alleges 'Defendants combined together,' 'Acadia facilities have combined together,' 'Jacobs and Acadia have committed fraud,' 'Defendants have committed fraud[.]' It is entirely unclear if the members of the civil conspiracy are only the Defendants, Acadia and Jacobs, or Defendants and an unknown number of 'Acadia facilities.' Plaintiff fails to allege the members of the civil conspiracy with the requisite specificity.")

Second, Plaintiffs failed to sufficiently allege a meeting of the minds. "Defendants have combined together" is inadequate. *See Gray*, 2020 WL 5996418 at *8 ("Plaintiff does not sufficiently allege there was a meeting of the minds. To the extent the allegations that 'Defendants combined together' or 'Acadia facilities have combined together' is Plaintiff's attempt to allege a meeting of the minds, the Court finds these allegations insufficient. Plaintiff does not identify when, where or how the meeting of the minds occurred. . .[d]ismissal of Plaintiff's civil conspiracy claim is proper.")

As such, Count VII should be dismissed pertaining to all Defendants.

### III.    Amendment to the Complaint Would Be Futile.

Pursuant to LCvR 7.1(o), Defendants assert that amendment to the Complaint would be futile.

Insofar as jurisdiction over Acadia Management, Plaintiffs cannot allege that Acadia Management has systematic or continuous contacts with Oklahoma given that it is a Delaware

limited liability company headquartered in Tennessee. Additionally, because the conduct that allegedly harmed Ms. Stewart occurred at Rolling Hills by Rolling Hills staff, there is no indication from Plaintiffs' allegations that Acadia Management purposefully availed itself of Oklahoma.

Insofar as failure to state a claim against Defendants, amendment would be futile on Count I. Plaintiffs' theory of alter ego liability appears to rest on an alleged alter ego relationship between Rolling Hills and Acadia Healthcare. Plaintiffs should not be given the opportunity to attempt to impute liability to Acadia Management having now realized that they have asserted virtually no allegations about Acadia Management, an entity that they averred they have claims against by filing the Complaint in the first place.

The Court should not permit Plaintiffs the opportunity to amend Count II. Plaintiffs' claim for negligence cannot be cured by amendment because the alter ego claim—upon which all of Plaintiffs' attempts to group the Defendants together is predicated—fails. Additionally, Plaintiffs already had the opportunity to distinguish the Defendants and their alleged negligent actions, but they failed to do so.

Plaintiffs should not be permitted to amend Count III as there is no recognized standalone right of action for *respondeat superior*. Even if permitted to amend, the claim will still be subject to dismissal, because it is not a plausible cause of action. *See Brakebill v. Bank of Am.*, No. 18-CIV-104-RAW, 2019 WL 1552499 (E.D. Okla. Jan. 25, 2019), *aff'd*, 774 F. App'x 506 (10th Cir. 2019) ("Although Fed. R. Civ. P. 15(a) provides that leave to amend shall be given freely, the district court may deny leave to amend where amendment would be futile[.] A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.") (citations omitted) (emphasis added). No amendment could change this fact.

Regarding Count IV, no amendments can establish the high pleading standards required to establish the essential elements of the claim for negligent hiring. Again, all Defendants were lumped together, and no facts were included save for general recitations.

Insofar as Count V, regardless of permission to amend, Plaintiffs cannot establish the existence of a contract between any Defendant and Ms. Stewart. Without a valid agreement, no breach of contract claim can be established, and no amendment can change this fact.

Regarding Count VI, the plaintiffs cannot plausibly allege the level of emotional distress necessary to support a pleading for intentional infliction of emotional distress. No amendments to the Complaint could demonstrate that the emotional distress was "so extreme that no reasonable person could be expected to endure it" based on the facts already alleged. Furthermore, any alleged emotional distress experienced by Ms. Stewart could not be attributed to Acadia Management, and no amendments could address these shortcomings.

Lastly, amendment to Count VII would be wholly futile. The claim is subject to dismissal even if amended, because Plaintiffs asserted no underlying tort or wrongful act committed by any Defendant in support of a civil conspiracy—nor can they. No amendment can resolve the nonexistence of an underlying tort or wrongful act. Thus, no civil conspiracy can exist.

## CONCLUSION

As established above, this Court does not have personal jurisdiction over Acadia Management. Plaintiffs' substantive claims are nothing more than conclusory statements against all "Defendants," without any plausible claim for relief. The "facts" in the Complaint are inconsistent and replete with confusion of the Defendants and vague allegations of unspecified "harm." There is simply nothing more to Plaintiffs' Complaint than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. 555) (quotations and citations omitted).

22

Therefore, pursuant to Rule 12(b)(2) and Rule 12(b)(6), this Court should grant Defendants' Motion to Dismiss and dismiss all of Plaintiffs' claims with prejudice.

Respectfully submitted,

s/ Mary Quinn Cooper
Mary Quinn Cooper, OBA #11966
Kathy R. Neal, OBA #674
Katie G. Crane, OBA #34575
Grace A. DeJohn, OBA #35582
MCAFEE & TAFT, A PROFESSIONAL CORPORATION
2 West 2nd Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone:   (918) 587-0000
Facsimile:   (918) 599-9317
maryquinn.cooper@mcafeetaft.com
kathy.neal@mcafeetaft.com
katie.crane@mcafeetaft.com
grace.dejohn@mcafeetaft.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March, 2025, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants for this case:

John David Lackey
Amy N. Bennett
LACKEY BENNETT, P.C.
20 East Fifth Street, Suite 1000
Tulsa, OK 74103

***Attorneys for Plaintiffs***

s/ Mary Quinn Cooper_____